34

Receipt 150003537

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**MARK W. DOBRONSKI,**
an individual,

                          Plaintiff,

v.

**GUARDIAN TAX NETWORK INC.**
**d/b/a GUARDIAN TAX,**
a Delaware corporation;

**OVATION TAX GROUP LLC,**
a California limited liability company;

**ALEXANDER JOHN ROVSEK,**
an individual;

**SABRINA NICHOLE MARINEZ,**
an individual; and,

**KATELYN ROSE POST,**
an individual,

                          Defendants.

Case: 4:23-cv-10119
Judge: Kumar, Shalina D.
MJ: Altman, Kimberly G.
Filed: 01-17-2023 At 11:26 AM
CMP DOBRONSKI V. GUARDIAN TAX NETWO
RK INC. ET AL (DA)

---

## **COMPLAINT**

NOW COMES the Plaintiff, MARK W. DOBRONSKI, appearing *in propria persona*, and for his complaint against Defendants alleges:

1.  This matter arises under the Telephone Consumer Protection Act of 1991

("TCPA"), 47 U.S.C. § 227, *et seq.*, the Michigan Telephone Companies as Common Carriers Act ("MTCCCA"), M.C.L. § 484.101, *et seq.*, and the Michigan Home Solicitation Sales Act ("MHSSA"), M.C.L. § 445.101, *et seq.*

### Parties

2.  Plaintiff is an individual, of the age of majority, a citizen of the United States of America, is a resident of and has a place of business in Orange County, Florida, has a residence and place of business in Washtenaw County, Michigan, and has a place of business in Wayne County, Michigan.

3. Upon information and belief, Defendant GUARDIAN TAX NETWORK INC. ("Guardian") is a corporation organized and existing under the laws of the State of Delaware, with it principal office purportedly being located at 2312 Park Avenue, #609, Tustin, California 92782, and does business under the fictitious business name "Guardian Tax."

4.  In reality, Guardian's "principal office" is not an office at all, but instead is merely a private mailbox at a UPS Store location.

5.  Upon information and belief, Defendant OVATION TAX GROUP LLC ("Ovation") is a limited liability company organized and existing under the laws of the State of California, with its principal office purportedly being located at 15910 Ventura Boulevard, Suite 801, Encino, California 91436.

2

6.  Upon information and belief, Defendant ALEXANDER JOHN ROVSEK ("Rovsek") is an individual, of the age of majority, is mentally competent, is not in the military service, resides at 82 Brookview, Dana Point, California 92629, and holds himself out as being the "sole proprietor" of Defendant Guardian.

7. Upon information and belief, Defendant SABRINA NICHOLE MARINEZ ("Marinez") is an individual, of the age of majority, is mentally competent, is not in the military service, resides at 1440 Nolita, Irvine, California 92612, and holds herself out as being an employee or agent for Defendant Guardian.

8.  Upon information and belief, Defendant KATELYN ROSE POST ("Post") is an individual, of the age of majority, is mentally competent, is not in the military service, resides at 14 Morella, Foothill Ranch, California 92610, and holds herself out as being an employee or agent for Defendant Guardian.

## Jurisdiction

9.  This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

10. This Court has limited personal jurisdiction over Defendants Guardian and Ovation pursuant to M.C.L. § 600.715, as a result of the defendant transacting any business within the state; and/or doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

3

11.  This Court has limited personal jurisdiction over Defendants Rovsek, Marinez, and Post pursuant to M.C.L. § 600.705,  as a result of the defendant transacting any business within the state; and/or doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

## Venue

12.  Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), as the tortious or illegal telephone calls complained of herein were received in this judicial district.

## The Telemarketing Laws

13. In response to widespread public outrage over intrusive telemarketing calls to homes and businesses, the United States Congress acted to prevent entities, like Defendant, from invading American citizen's privacy and to prevent abusive "robo-calls" by enacting the TCPA.

14.   According to the Federal Communications Commission ("FCC"), "Unwanted calls and texts are the number one complaint to the FCC.  There are thousands of complaints to the FCC every month on both telemarketing and robocalls."

15.  Congress explicitly found that robo-calling is an invasion of privacy.

16.  In regard to such telephone solicitations, Senator Hollings of South

Carolina, the primary sponsor of the bill, explained, "computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall... these computerized telephone calls threaten our personal safety... These machines are out of control, and their use is growing by 30 percent every year. It is telephone terrorism, and it has got to stop...." See *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 17 FCC Rcd. 17459, 17474, fn. 90 (2002), quoting 137 Cong. Rec. 30,821-30,822 (Nov. 7, 1991).

17. According to YourMail, Inc., a company which tracks robocall activity and publishes the YouMail Robocall Index, during calendar year 2021 alone, American consumers were bombarded with over 50.5 *billion* robocalls; an average of over 150 robocalls to each man, woman, and child. [Source: www.robocallindex.com ].

18. In 2021, nearly 1 in 3 Americans say they have fallen victim to a phone scam in the past year, with reported losses to phone scams exceeding $29.8 Billion. [Source: www.cndb.com/2021/06/29/americans-list-billions-of-dollars-to-phone-scams-over-the-past-year.html ].

19. Congress has found that interstate telemarketing fraud has become a problem of such magnitude that the resources of the Government are not sufficient

to ensure adequate consumer protection from such fraud.

20. As a result, in enacting the TCPA, Congress intentionally created a legally enforceable bounty system, not unlike *qui tam* statutes, to incentivize the assistance of aggrieved private citizens to act as "private attorneys general" in enforcing federal law.

21. The TCPA, at 47 U.S.C. § 227(b), promulgates in relevant part as follows:

"Restrictions on use of automated telephone equipment

(1) Prohibitions It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice— ...

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States;

(B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order by the Commission under paragraph (2)(B)...."

22. Pursuant to authority delegated by Congress to the FCC under the TCPA
at 47 U.S.C. § 227(b)(2), the FCC has adopted regulations to implement and carry out
the TCPA.

23. The TCPA implementing regulations, at 47 C.F.R. § 64.1200, promulgate
in relevant part:

> "(a) No person or entity may:
>
> (1) Except as provided in paragraph (a)(2) of this section, initiate any telephone call (other than a call made for emergency purposes or is made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice; ...
>
> (iii) To any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call...
>
> (2) Initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party or the prior express consent of the called party when the call is made by or on behalf of a tax-exempt nonprofit organization, or a call that delivers a "health care" message made by, or on behalf of, a "covered entity" or its "business associate," as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103.
>
> (3) Initiate any telephone call to any residential line using

an artificial or prerecorded voice to deliver a message without the prior express written consent of the called party, unless the call;

(i) Is made for emergency purposes;

(ii) Is not made for a commercial purpose;

(iii) Is made for a commercial purpose but does not include or introduce an advertisement or constitute telemarketing;

(iv) Is made by or on behalf of a tax-exempt nonprofit organization; or

(v) Delivers a "health care" message made by, or on behalf of, a "covered entity" or its "business associate," as those terms are defined in the HIPAA Privacy Rule, 45 CFR 160.103...

(d) No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes

(or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges. . .

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made. . . ."

24. The TCPA implementing regulations at, 47 C.F.R. § 64.1601, additionally

promulgate in relevant part:

> "(e) Any person or entity that engages in telemarketing, as defined in section 64.1200(f)(10) **must** transmit caller identification information.
>
> (1) For purposes of this paragraph, **caller identification information must include either CPN or ANI, and, when available by the telemarketer's carrier, the name of the telemarketer**. It shall not be a violation of this paragraph to substitute (for the name and phone number used in, or billed for, making the call) the name of the seller on behalf of which the telemarketing call is placed and the seller's customer service telephone number. **The telephone number so provided must permit any individual to make a do-not-call request during regular business hours.**
>
> (2) Any person or entity that engages in telemarketing is prohibited from blocking the transmission of caller identification information." [Emphasis added.]

25.  The TCPA, at 47 U.S.C. § 227(b)(3), provides for a private right of action, as follows:

> "PRIVATE RIGHT OF ACTION.  **A person or entity** may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State –
>
> (A) an action based on a violation of this **subsection or the regulations prescribed under this subsection** to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages **for each such violation**, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." [Emphasis added.]

26. Pursuant to Congressional mandate set forth at 47 U.S.C. § 227(c)(1), the FCC adopted regulations establishing a national "do not call" database and prohibiting any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in such database, which regulations are set forth at 47 C.F.R. § 64.1200(c), and promulgate in relevant part:

"No person or entity shall initiate any telephone solicitation to:...

"(2) A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government...."

27. Additionally, the TCPA, at 47 U.S.C. § 227(c)(5), provides for a private right of action, as follows:

"Private right of action. A person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in **violation of the regulations prescribed under this subsection** may, if otherwise permitted by the laws or rules of court of a State bring in an appropriate court of that State—

(A) an action based on a violation of the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual monetary loss from such a violation, or to receive up to $500 in damages **for each such violation**, whichever is greater, or

(C)  both such actions.

It shall be an affirmative defense in any action brought under this paragraph that the defendant has established and implemented, with due care, reasonable practices and procedures to effectively prevent telephone solicitations in violation of the regulations prescribed under this subsection. If the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph."

28.  The "do not call" proscriptions also are applicable to cellular or wireless telephone numbers, as set forth at 47 C.F.R. § 64.1200(e), which states:

"The rules set forth in paragraph (c) and (d) in this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers...."

29.  The FCC has declared that telephone subscribers who have listed their wireless telephone number on the national do-not-call list are deemed to be "residential subscribers". See *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* 18 FCC Rcd. 14014, 14039, ¶ 36

(2003).

30. The MTCCCA, at M.C.L. § 484.125, promulgates in relevant part as follows:

> "(2) A caller shall not use a telephone line to contact a subscriber at the subscriber's residence, business, or toll-free telephone number to do either of the following: ...
>
> (a) Deliver a recorded message for the purpose of presenting commercial advertising to the subscriber, unless either of the following occurs:
>
> (i) The subscriber has knowingly and voluntarily requested, consented, permitted, or authorized the contact from the caller.
>
> (ii) The subscriber has knowingly and voluntarily provided his or her telephone number to the caller.
>
> (b) Deliver or attempt to deliver intrastate commercial advertising if the caller activates a feature to block the display of caller identification information that would otherwise be available to the subscriber...
>
> (5) A subscriber contacted by a caller in violation of this section may bring an action to recover damages of $1,000.00, together with reasonable attorneys' fees...
>
> (9) A caller who violates this section is guilty of a misdemeanor, punishable by a fine of $1,000.00 or imprisonment for 10 days, or both."

31. The MHSSA, at M.C.L. § 445.111a(5), promulgates:

> ". . . A telephone solicitor shall not make a telephone solicitation to a residential telephone subscriber whose

name and residential telephone number is on the
then-current version of the federal [do-not-call] list."

32. The MHSSA, at M.C.L. § 445.111b, promulgates in relevant part:

"(1) At the beginning of a telephone solicitation, a person
making a telephone solicitation to a residential telephone
subscriber shall state his or her name and the full name of
the organization or other person on whose behalf the call
was initiated and provide a telephone number of the
organization or other person on request. A natural person
must be available to answer the telephone number at any
time when telephone solicitations are being made...."

33. The MHSSA, at M.C.L. § 445.111c, promulgates in relevant part as
follows:

"(1) It is an unfair or deceptive act or practice and a
violation of this act for a telephone solicitor to do any of
the following:...

(f) Fail to comply with the requirements of section 1a or
1b.

(2) ... [A] person who knowingly or intentionally violates
this section is guilty of a misdemeanor punishable by
imprisonment for not more than 6 months or a fine of not
more than $500.00, or both.

(3) A person who suffers loss as a result of violation of this
section may bring an action to recover actual damages or
$250.00, whichever is greater, together with reasonable
attorney fees."

34. Plaintiff's telephone lines have been besieged with telemarketing calls

hawking such things as alarm systems, Google listings, automobile warranties, health

insurance, life insurance, credit cards, and even financial miracles from God. Some

14

calls are blatant scams, including calls purportedly from the Social Security Administration, the U.S. Drug Enforcement Administration, and other government agencies, claiming that arrest warrants have been issued against Plaintiff for alleged drug trafficking and money laundering activities.

35. Plaintiff's residential telephone numbers are ***-1212, ***-2424, and ***-1000.

36. Plaintiff's cellular telephone number is ***-9671.

37. Plaintiff's residential telephone numbers ***-1212 and ***-2424 are each listed on the National Do Not Call Registry maintained by the United States Federal Trade Commission ("FTC") pursuant to 16 C.F.R. Part 310 and have been contuiously so listed since June 29, 2003 and at all times relevant hereto.

38. Plaintiff's residential telephone number ***-1000 is listed on the National Do Not Call Registry maintained by the FTC and has been continuously so listed since May 27, 2022 and at all times relevant hereto.

39. Plaintiff's cellular telephone number ***-9671 is listed on the National Do Not Call Registry maintained by the FTC and has been continuously so listed since December 9, 2004 and at all times relevant hereto.

40. By listing his residential and cellular telephone numbers on the National Do Not Call Registry, Plaintiff has given constructive notice to the world, including

each and every one of the Defendants, that Plaintiff does not wish to receive telephone solicitations or robocalls at his residential and/or cellular telephone numbers.

41.    Courts are legally bound to give great deference to the FCC's interpretations of the TCPA and its own regulations.

42.  The FCC has issued a declaratory ruling defining "called party" as "the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the **non-subscriber customary user of a telephone number included in a family or business calling plan**." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02–278, WC Docket No. 07–135, FCC 15–72, 2015 WL 4387780, at *26, ¶ 73 (FCC July 10, 2015) [Emphasis added].

43.  Plaintiff is  a customary user of the called telephone lines, is the one that was the actual recipient of the telephone calls at issue in this complaint, and suffered the nuisance and invasion of privacy of same.  Thus, Plaintiff has standing to bring this action for alleged violations of TCPA's robocall provisions.  See *Leyse v. Bank of America Nat. Ass'n*, 804 F.3d 316, 324 (C.A.3, 2015).

44.  At no time relevant hereto has Plaintiff or any other authorized person requested, consented, permitted, or authorized the contact from the Defendant.

45.  At no time has Plaintiff provided permission to the Defendant to engage in telephone solicitation with the Plaintiff via telephone.

46.  At no time has Plaintiff provided "prior express consent" or "prior express written consent" for any of the Defendants or anyone acting on behalf of the Defendants to initiate any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to Plaintiff's residential telephone number.

47.  The FCC has declared that purporting to receive consent during a call does not constitute the *prior* consent necessary to deliver the message in the first place, as the request is part of the telemarketing. See *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14019, 2003 WL 21517853, at *49, ¶ 142 (June 26, 2003).

48.  Pursuant to 47 U.S.C. § 217, the act, omission, or failure of any officer, agent, or other person acting for or employed by an common carrier or user, acting within the scope of his employment, shall in every case also be deemed to be the act, omission, or failure of such carrier or user as well as that of the person.

49.  The FCC has clarified that sellers may be held vicariously liable for violations of the TCPA by third-party telemarketers that initiate calls to market the seller's products or services, declaring as follows:

> "[A] company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules and calls placed by a third party on behalf of that company are treated as if the company itself placed the call."

*In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling, 20 FCC Rcd 13664, 13667, ¶ 7 (2005).

50. When considering individual corporate officer liability, other Courts have agreed that a corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *See, e.g., Jackson Five Star Catering, Inc. v. Beason,* No. 10-10010, 2013 U.S. Dist. LEXIS 155985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participating in or personally authorized the conduct found to have violated the statute.") (internal citation omitted); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D.MD. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

51. It is well settled under Michigan law that corporate employees and officials are personally liable for all tortious and criminal acts in which they participate, regardless of whether they are acting on their own behalf or on behalf of a corporation. A corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that

18

he acted as an agent for the corporation and not on his own behalf.

52. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of invasion of privacy and intrusion on Plaintiff's right of seclusion.

53. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of the occupation of the telephone line by unwelcome calls, making the phone unavailable for legitimate callers or outgoing calls, including emergency calls, when the telephone line was seized by Defendant's calls.

54. For each and every call alleged herein initiated to Plaintiff's telephone line, Defendants caused an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features on Plaintiff's telephone, which features are designed to inform the user of important missed communications.

55. Each and every call placed without consent by Defendants alleged herein to Plaintiff's telephone lines resulted in the injury of a trespass to Plaintiff's chattel, namely Plaintiff's telephone line and its telephone services.

56. For purposes of the TCPA, the FCC has defined "willfully or knowingly"

to mean that the violator knew that he was doing the act in question, in this case, initiating a telephone solicitation, irrespective of any intent to violate the law. A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance.

## Allegations Specific to this Complaint

57. Defendants are engaged in a fraudulent scheme seeking out individuals who owe back taxes to the Internal Revenue Service promising "tax debt forgiveness." The first step of the scheme is that the Defendants will seek a substantial up front fee from the individual to conduct a "tax investigation." During this step, Defendants seek detailed personal information from the individual. No real "tax investigation" is undertaken. After a brief period, the next step of the scheme is for the Defendants to attempt to charge fee for "resolution services" which amounts to approximately one-half of the tax debt owed.

58. In order to located individuals who owe back taxes, Defendants utilize an automatic telephone dialing system to send pre-recorded telephone messages to consumers *en masse*.

59. A consumer receiving such pre-recorded telephone message is provided the opportunity to press '1' to speak to one of Defendants' representatives at which time the telemarketing pitch is made.

60. Defendants go to great lengths to conceal their actual identities, and the only time that Defendants provide any real identification of the business is once Defendants believe they have a willing victim who has provided their credit card information to Defendants.

61. In order to identify the Defendants, Plaintiff has to engage in an investigative technique termed a "canary trap", wherein Plaintiff provides false, but unique, identifying information during each received call, in particular a unique name. If and when that unique information surfaces at a later date, a tie-in between the two events, and hence the ability to identify the source call, is able to be made.

The Calls

62. On each of the following dates and times, Defendants or Defendants' agents initiated telephone calls using an automatic telephone dialing system or an artificial prerecorded voice to Plaintiff's residential or cellular telephone numbers, as follows:

| Call | Incoming Line | Date | Time | Caller ID |
|------|--------------|------|------|-----------|
| 1 | ***-1212 | 06/20/2022 | 14:58 | 734-228-7840 |
| 2 | ***-1212 | 07/25/2022 | 11:24 | 217-507-2376 |
| 3 | ***-1212 | 07/26/2022 | 13:16 | 734-451-1528 |
| 4 | ***-1000 | 08/10/2022 | 12:27 | 205-848-6704 |
| 5 | ***-9671 | 08/15/2022 | 12:34 | 803-965-6438 |
| 6 | ***-1212 | 10/25/2022 | 16:45 | 346-239-2527 |
| 7 | ***-9671 | 11/02/2022 | 19:15 | 530-208-1440 |
| 8 | ***-1000 | 11/02/2022 | 19:45 | 530-208-1429 |
| 9 | ***-1212 | 11/03/2022 | 11:15 | 530-208-1429 |

| 10 | ***-1212 | 11/04/2022 | 13:10 | 530-208-1292 |
| 11 | ***-1212 | 11/04/2022 | 13:37 | 530-427-1436 |
| 12 | ***-1212 | 11/04/2022 | 16:54 | 530-208-1388 |
| 13 | ***-1212 | 11/04/2022 | 18:35 | 530-208-1235 |
| 14 | ***-1212 | 11/04/2022 | 20:03 | 530-208-1278 |
| 15 | ***-1212 | 11/07/2022 | 10:17 | 530-208-1432 |
| 16 | ***-1212 | 11/07/2022 | 14:51 | 530-208-1446 |
| 17 | ***-1000 | 11/07/2022 | 16:41 | 530-208-1445 |
| 18 | ***-1212 | 11/07/2022 | 19:43 | 530-208-1432 |
| 19 | ***-1000 | 11/08/2022 | 10:43 | 530-208-1441 |
| 20 | ***-9671 | 11/08/2022 | 15:11 | 346-239-2863 |
| 21 | ***-1212 | 11/09/2022 | 16:06 | 346-239-6998 |
| 22 | ***-2424 | 11/10/2022 | 18:38 | 315-207-8957 |
| 23 | ***-1212 | 11/10/2022 | 18:54 | 956-389-0328 |
| 24 | ***-1212 | 11/11/2022 | 12:21 | 346-239-6305 |
| 25 | ***-1212 | 11/11/2022 | 12:40 | 346-239-6823 |
| 26 | ***-1212 | 11/11/2022 | 15:19 | 346-239-6027 |
| 27 | ***-1212 | 11/14/2022 | 13:56 | 346-239-2130 |
| 28 | ***-1212 | 11/14/2022 | 16:20 | 346-239-2821 |

63. On each of the calls listed in paragraph 62, *supra*, when Plaintiff answered the telephone and said "hello", Plaintiff would observe a 4-5 second delay and then would hear a pre-recorded message stating as follows:

> "Hello, this is Mary, an assistant here at Central Processing Center for Federal Back Tax Negotiation. How are you doing today? [3 second delay.] OK, well the purpose of my call is to notify you of the new zero owed tax debt forgiveness program and to see if you already enrolled in the program or settled the debt...."

64. The name Central Processing Center for Federal Back Tax Negotiation is not registered with any state or comparable regulatory authority for any business entity.

65. At no time during or after the message was the telephone number or address of the purported caller provided.

66. At no time during the message was there provided an automated, interactive, voice- and/or key press-activated opt out mechanism for the caller person to make a do-not-call request including a brief explanatory instruction on how to use such mechanism.

67. On each occasion, immediately after terminating the telephone call, Plaintiff would dial back the caller identification number displayed and, on each occasion, the dialed telephone number was not a working or valid telephone number.

68. On July 25, 2022, during the course of Call 2 identified in paragraph 62, *supra*, Plaintiff pressed '1' and spoke to an individual who identified himself as "A.J." (whom Plaintiff later determined to be Defendant Rovsek). Rovsek stated that he was with "GuardianTax.com" and proceeded to pitch a 2 step process by which he would wipe out Plaintiff's tax debt. The first step required a $595.00 retainer. Plaintiff provided Rovsek with detailed personal financial information including personal identifying information, date of birth, Social Security number, and other information. Rovsek also took Plaintiff's credit card information. Rovsek stated that he would forward a document so that his partners could be authorized to obtain Plaintiff's tax return information directly from the Internal Revenue Service.

69. On July 25, 2022, immediately subsequent to the telephone conversation, Plaintiff received an email from Rovsek which included an IRS Form 2828 (Power of Attorney and Declaration of Representative).  The form identified Rovsek's partners as Defendants Marinez and  Post.

70. On August 10, 2022, during the course of Call 4 identified in paragraph 63, *supra*, Plaintiff pressed '1' and spoke to an individual who identified himself as "Scott Grady... a senior tax advisor with The Tax Group."  Grady made the same pitch as Rovsek did as detailed in paragraph 68, *supra*.  Grady quoted a $750.00 retainer in order to do the first phase of the tax debt elimination.  Plaintiff provided Grady with a controlled credit card number. Although Grady stated that a document would be sent to Plaintiff via email, no form was sent.  Grady provided a call back telephone number 818-572-0592.

71. When Plaintiff called back to telephone number 818-572-0592, the call was answered "Guardian Tax."

72. On August 10, 2022, at 4:41 P.M., a charge in the amount of $750.00 was made against Plaintiff's controlled credit card number with the merchant identified as Ovation Tax Group.

73. On November 21, 2022, Plaintiff telephoned Defendant Rovsek and engaged in an investigative technique termed a "Reid interview" or a confrontational

24

interview. During this interview, Rovsek admitted that: he was the "sole propretor" of Defendant Guardian; that he initiated recorded message robocalls pitching the income tax "forgiveness" services; and, he further admitted that such calls are illegal.

## COUNT I
## VIOLATION OF THE TCPA - ROBOCALL

74. Plaintiff incorporates the allegations of paragraphs 1 through 73, *supra*.

75. Each of Call Numbers 1 through 28, inclusive, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. 64.1200(a)(1)(iii) and/or 47 C.F.R. § 64.1200(a)(2), as Defendant or Defendant's agent initiated a telephone call to Plaintiff's cellular telephone or residential telephone line using an automatic telephone dialing system or a artificial or prerecorded voice without the prior express consent or prior express written consent of the called party and there being no emergency.

76. The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

## COUNT II
## VIOLATION OF THE TCPA - CALL ABANDONMENT

77. Plaintiff incorporates the allegations of paragraphs 1 through 73, *supra*.

78. Each of Calls 1 through 28, inclusive, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(a)(7), as the call was not

connected to a live sales representative within two (2) seconds of the called person's completed greeting.

79. The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

**COUNT III**
**VIOLATION OF THE TCPA - FAILURE TO IDENTIFY**

80. Plaintiff incorporates the allegations of paragraphs 1 through 73, *supra*.

81. Each of Calls 1 through 28, inclusive, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(a)(7)(A), as the caller did not state the name of the business or entity on whose behalf the call was placed, and a telephone number for such business or entity.

82. The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

**COUNT IV**
**VIOLATION OF THE TCPA - NO OPT-OUT**

83. Plaintiff incorporates the allegations of paragraphs 1 through 73, *supra*.

84. Each of Calls 1 through 28, inclusive, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(a)(7)(B), as the caller did not provide an automated, interactive voice- and/or key-press activated opt-out mechanism that enables the called person to make a do-not-call request prior to

26

terminating the call.

85.  The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

**COUNT V**
**VIOLATION OF THE TCPA - DO NOT CALL**

86.  Plaintiff incorporates the allegations of paragraphs 1 through 73, *supra.*

87.  Each of Calls 1 through 28, inclusive, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(c)(2), as Defendants or Defendants' agent initiated a telephone solicitation to a residential telephone subscriber who has registered his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.

88.  The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

**COUNT VI**
**VIOLATION OF THE TCPA - NO WRITTEN DNC POLICY**

89.  Plaintiff incorporates the allegations of paragraphs 1 through 73, *supra.*

90.  Each of Calls 1 through 28, inclusive, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(d)(1), as Defendants and/or Defendants' agents failed to have a written do not call policy, available upon

27

demand, for maintaining a do-not-call list.

91.  The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls.

**COUNT VII**
**VIOLATION OF THE TCPA - FALSIFIED CALLER ID**

92.  Plaintiff incorporates the allegations of paragraphs 1 through 73, *supra.*

93.  Each of Calls 1 through 28, inclusive, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1601(e)(1), as Defendants and/or Defendants' agents failed to provide caller identification information displaying a telephone number which would permit any individual to make a do-not-call request during regular business hours; and, additionally, the caller identification information did not include the name of the telemarketer or the seller on whose behalf the telemarketing call was placed.

94.  The Defendants had to take deliberate and overt action to manipulate the telephone network equipment to provide false caller identification information, therefore the aforesaid violation of the TCPA was wilful and/or knowing.

**COUNT VIII**
**VIOLATION OF THE MTCCCA**

95.  Plaintiff incorporates the allegations of paragraphs 1 through 73, supra.

96.  Each of Calls 1 through 28, inclusive, were in violation of the of the

28

MTCCCA, specifically M.C.L. § 484.125(2)(a), as Defendant or Defendant's agent used a telephone line to contact a subscriber at the subscriber's residence to deliver a recorded message for the purpose of presenting commercial advertising and the subscriber having not requested, consented, permitted, or authorized the contact; or M.C.L. 484.125(2)(b), as Defendant or Defendant's agent delivered or attempted to deliver intrastate commercial advertising having activated a feature to block the display of caller identification information that would otherwise be available to the subscriber.

**COUNT IX**
**VIOLATION OF THE MHSSA**

97.  Plaintiff incorporates the allegations of paragraphs 1 through 73, *supra*.

98.  Each of Call Numbers 1 through 3, inclusive, were in violation of the MHSSA, specifically M.C.L. § 445.111a(5), as Defendants or Defendants' agent made a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the federal do-not-call list; and/or M.C.L. § 445.111b(1), as Defendants or Defendants' agents did not at the beginning of the telephone solicitation state his or her name and the full name of the organization on whose behalf the call was initiated and provide a telephone number of the organization on request.

## PRAYER FOR RELIEF

WHEREFORE, the aforesaid premises considered, Plaintiff prays that this Court enter a judgment for Plaintiff and against the Defendants, jointly and severallyu, as follows:

A.    Damages for violations of the TCPA alleged:

| Count | Violations |
|-------|------------|
| I     | 28         |
| II    | 28         |
| III   | 28         |
| IV    | 28         |
| V     | 28         |
| VI    | 28         |
| VII   | 28         |

A total of 196 violations at $500 per violation for damages of $98,000.00, which amount shall be trebled because the violations were willful and/or knowing, for total damages of $294,000.00.

B.  Damages for violations of the MTCCCA alleged at Count VIII: 28 violations at $1,000.00 per violation, for total damages of $28,000.00.

C. Damages for violations of the MHSSA alleged at Count VIII: 28 violations at $250.00 per violation, for damages of $7,000.00.

The cumulative total amount of damages claimed in this action is $329,000.00,and in the event of default judgment is the sum certain damages amount that will be sought.

D.  An award of Plaintiff's taxable costs and disbursements incurred in the filing and prosecution of this action;

E.  An injunction enjoining Defendants from initiating any telephone calls to Plaintiff's telephone lines.

F.  Interest accruing from the date of filing until paid at the statutory rate; and,

G.  Such other and further relief as this Court deems necessary, reasonable, prudent and proper under the circumstances.

Respectfully submitted,

Dated: January 12, 2023

Mark W. Dobronski
Post Office Box 85547
Westland, Michigan 48185-0547
Telephone: (734) 330-9671
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

JS 44 (Rev. 10/20)

# CIVIL COVER SHEET

County in which action arose: Washtenaw, MI

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

MARK W. DOBRONSKI

**DEFENDANTS**

GUARDIAN TAX NETWORK INC.; OVATION TAX GROUP LLC; ALEXANDER JOHN ROVSEK; SABRINA NICHOLE MARINEZ; and, KATELYN ROSE POST

**(b)** County of Residence of First Listed Plaintiff    Orange, FL
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    New Castle, DE
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Pro Se

Case:4:23-cv-10119
Judge: Kumar, Shalina D.
MJ: Altman, Kimberly G.
Filed: 01-17-2023 At 11:26 AM
CMP DOBRONSKI V. GUARDIAN TAX NETWO
RK INC. ET AL (DA)

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | |
| ☐ 2 | U.S. Government Defendant | |
| ■ 3 | Federal Question *(U.S. Government Not a Party)* | |
| ☐ 4 | Diversity *(Indicate Citizenship of Parties in Item III)* | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ■ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | | | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ■ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court |
| ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer |
| ☐ 8 Multidistrict Litigation - Direct File | | |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
47 USC 227

Brief description of cause:
Illegal Telemarketing Calls

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 329,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ Yes    ■ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions:)*

JUDGE _____    DOCKET NUMBER _____

DATE
January 12, 2023

SIGNATURE OF ATTORNEY OF RECORD
*Mark W. Dobronski*

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

## PURSUANT TO LOCAL RULE 83.11

1.         Is this a case that has been previously dismissed?          ☐ Yes
                                                                        ☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


2.         Other than stated above, are there any pending or previously          ☐ Yes
           discontinued or dismissed companion cases in this or any other        ☒ No
           court, including state court? (Companion cases are matters in which
           it appears substantially similar evidence will be offered or the same
           or related parties are present and the cases arise out of the same
           transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes :



PRESS FIRMLY TO SEAL

UNITED STATES POSTAL SERVICE

■ Expected delivery date spa
■ Most domestic shipments
■ USPS Tracking® included f
■ Limited international insura
■ When used internationally,

*Insurance does not cover certain It
Domestic Mail Manual at http://pou
** See International Mail Manual at h

FLAT RATE E
ONE RATE ■ ANY WEIGH

TRACKED ■ IN

PS00001000014

EP14F May 2020
OD: 12 1/2 x 9 1/2

USPS.COM/PICKUP

PRIORITY MAIL®

**P**

US POSTAGE PAID
**$9.90**

Origin: 48130
01/17/23
2820100130-4

Retail

SHIP
TO:
231 W LAFAYETTE BLVD
FL 5TH
DETROIT MI 48226-2777

EXPECTED DELIVERY DAY: 01/13/23

0 Lb 6.00 Oz

RDC 22

C052

USPS TRACKING®

9505 5123 0482 3012 9865 70

USPS TRACKING® #

FROM:
MARK W DOBRONSKI
PO BOX 83547
WESTLAND, MI 48185-0547

TO:
UNITED STATES DISTRICT COURT
ATTN: CLERK'S OFFICE
231 W LAFAYETTE BLVD FL 5
DETROIT, MI 48226-2700

U.S. MARSHALS

Case 4:23-cv-10119
Judge: Kumar, Shalina D.
MJ: Altman, Kimberly G.
Filed: 01-17-2023 At 11:26 AM
CMP DOBRONSKI V. GUARDIAN TAX NETWO
RK INC. ET AL (DA)

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® and Priority Mail International® shipments. Misuses may be a violation of federal law. This package is not for resale. EP14F © U.S. Postal Service; May 2020; All rights reserved.